**In the Matter of the SOLID WASTE PERMIT FOR THE NSP RED WING ASH DISPOSAL FACILITY to be located in Red Wing, Minnesota.**

No. C1–87–1696.

Court of Appeals of Minnesota.

March 29, 1988.

Review Denied May 18, 1988.

Carla C. Kjellberg, St. Paul, for relators John Falconer and Earth Protector.

Hubert H. Humphrey, III, Atty. Gen., Dwight S. Wagenius, Asst. Atty. Gen., St. Paul, for respondent Minnesota Pollution Control Agency.

JoAnn McGuire, Minneapolis, Larry D. Espel, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for respondent NSP.

Heard, considered and decided by FORSBERG, P.J., and NORTON and SCHUMACHER, JJ.

## OPINION

NORTON, Judge.

Petitioners challenge the issuance of a permit by the Minnesota Pollution Control Agency (MPCA) authorizing Northern States Power Company (NSP) to construct and operate a site for ash disposal in Red Wing, Minnesota. The agency determined that a contested case was not justified under Minn.R. 7001.0130, subpt. 1 (1986). Petitioners object to the MPCA's determination not to hold a contested case hearing. NSP was permitted by this court to intervene in this appeal, by order dated October 6, 1987. The order also denied petitioners' request to stay construction pending appeal.

## FACTS

This appeal arose from NSP's petition to the MPCA for a permit to construct and operate a solid waste disposal facility for the disposal of refuse-derived fuel (RDF) ash from the NSP Red Wing Power Plant. The MPCA issued a draft permit and solicited comment. Two public informational meetings were held during the 30–day comment period required by Minn.R. pts. 7001.-0010 to 7001.0210. John Falconer, a Red Wing citizen, submitted comments and requested a contested case hearing be held to evaluate the permit request. In his petition Falconer raised questions of environmental damage and adverse health effects posed by the ash disposal facility and its location near a populated area.

On July 17, 1987 a proposed order prepared by the MPCA staff denying the request for the contested case hearing and issuing the permit was mailed to members of the agency board. An agency board meeting was held on July 28, 1987 at which time public comment was accepted. The agency deliberated on the proposed order and permit and voted 7 to 1 to accept the

recommendation of the staff and the final order forthwith.

The MPCA evaluated the request for the contested case hearing pursuant to rule 7001.0130. It made findings that:

"5. The MPCA's decision whether to order a contested case hearing is governed by its permit rule, Minn.Rules pt. 7001.0130, subp. 1, which provides:

The MPCA shall hold a contested case hearing if it finds all of the following:

A. that a person requesting the contested case hearing has raised a material issue of fact or of the application of facts to law related to the director's preliminary determination or the terms of the draft permit;

B. that the agency has jurisdiction to make determinations on the issues of fact or of the application of facts to law raised by the person requesting the contested case hearing; and

C. *that there is a reasonable basis underlying issues of fact or law raised by the person that requests the contested case hearing such that the holding of a contested case hearing would aid the agency in making a final determination on the permit application.*

\*     \*     \*     \*     \*     \*

"6. The requester has raised the following issues in the request for a contested case hearing:

a. Public health threat from fugitive ash emissions; and

b. Proposed location adjacent to city population.

"7. The MPCA agrees that item [5]A is satisfied. In order to have an 'issue of fact' one of the potential parties to the proposed contested case must hold a view opposite to the view of the person raising the question. A question is a 'material issue of fact' if the resolution of that fact in favor of the person raising the issue would change the result that would otherwise have been reached in the case. The requester has raised a material issue of fact related to the issuance of the permit. The MPCA also agrees that item [5]B is satisfied; the MPCA has at least some

jurisdiction over each of the issues raised. *Therefore, the issue before the MPCA is raised by item C, i.e., whether there is a reasonable basis underlying the issue raised by the requester such that the holding of a contested case hearing would aid the MPCA in making a final determination on the permit. The requester must raise an issue where the question could be resolved in a contested case hearing and where the resolution of that issue would make a difference in the MPCA's final determination on the permit.*

"8. The issues raised by the requester are discussed below.

a. *Public Health Threat from Fugitive Ash Emissions.*

One of the issues raised in the request for hearing is the potential for a public health threat from fugitive ash emissions.

The MPCA agrees that there may be a potential for fugitive ash emissions, but the operations of the facility are designed to minimize this risk. The RDF ash is conditioned with water prior to being hauled in order to reduce dust and to insure proper compaction when spread. The permit requires that all ash transport be restricted to transport vessels capable of total enclosure so as to protect the contents from spillage, wind, and moisture. The permit also requires that six inches of soil be placed over the compacted ash weekly, or more often as needed for dust control.

*However, MPCA believes that the issue raised is valid and should be investigated further.* A comprehensive analysis of the issue requires determination of potential emissions from the facility, dispersion modeling of those emissions to determine ambient impacts and subsequent assessment of the potential health effects. In order to conduct the analysis, additional information must be gathered. The additional information needed is: (1) a fugitive ash emission factor to provide an estimate of the emission rate from the facility, and (2) data

regarding food chain exposures to heavy metals.

The issue of metals in the food chain will begin to be resolved this summer as studies by University of Minnesota researchers will be conducted (in conjunction with MPCA staff) to investigate food chain exposure to metals. The fugitive dust emission factor will be somewhat more difficult to determine. *At present, no reliable information exists on the matter, and MPCA staff knows of none to be forthcoming.* The most plausible means of determining an actual emission factor is to conduct a study which directly measures emissions from an operating facility. The most accurate measurements could be taken from the actual facility in question, operating under normal conditions. Another means of investigating the issue is to conduct a preliminary health risk assessment on the fugitive ash emissions to determine the minimum level of emissions needed to cause a public health concern. This can be done without conducting actual monitoring.

The draft permit has been modified to address the concern of a public health threat from fugitive ash emissions. The permit now requires the permittee to conduct a preliminary health risk assessment which includes direct and indirect (food chain) exposure to dioxins, furans, and heavy metals that may be present in the ash. Based on the results of the preliminary health risk assessment, the MPCA may require on-site monitoring of fugitive ash emissions during normal operations of the facility for one year.

MPCA believes that the requester has not produced any additional information that would result in further modification of the permit. *The MPCA also believes that no additional information will be gathered during a contested case hearing that would result in further modification of the permit.* Therefore, there is not a reasonable basis underlying the issue of fact with respect to the issues raised by the requester that could be adjudicated in a contested case hearing that would aid the MPCA in making a final decision on the permit.

b. *Proposed Location.*

The second issue raised in the request for hearing is whether the proposed location of the facility is appropriate. This concern is based on the statement that the proposed facility is adjacent to a city population where the water flow and prevailing winds blow into residential areas.

The prevailing wind concern has been addressed in item 1.a. above. Regarding the location concern, the proposed facility is located in an area that is currently zoned agricultural and the present land use is agricultural. The nearest occupied dwelling is approximately one-half mile from the facility. The facility is also located adjacent to the existing Red Wing Sanitary Landfill.

A conditional use permit which deals with land use and land management was issued to the permittee on July 13, 1987 by the City of Red Wing.

The Facility design includes the construction of a liner and leachate collection system to protect the ground water. A 60-mil thick synthetic liner and collection system will be installed beneath all disposal areas. As a precaution, a 12-inch layer of clayey soil will be placed beneath the lowest portion of the synthetic liner to further control any seepage. The collected leachate will be taken to the Red Wing Municipal Wastewater Treatment Plant for treatment.

In addition to the liner and leachate collection system and liner leak detection lysimeter, the MPCA believes that the geology of the proposed site provides a great deal of natural protection to the ground water quality. Data from previous studies and information from on-site borings indicate that the leachate attenuation potential of the Franconia Formation beneath the site will provide for complete attenuation of the metals from the leachate for 10,000 years. A series of monitoring wells will also be placed around the disposal site, and routine ground water monitoring will be conduct-

ed throughout the operating life and postclosure period of the Facility.

*MPCA believes that the Facility is designed to adequately protect the ground water, and that the public health is not at risk. MPCA believes that the requester has not produced any additional information that would result in further modification of the permit. Therefore, there is not a reasonable basis underlying the issue of fact with respect to the issues raised by the requester that could be adjudicated in a contested case hearing that would aid the MPCA in making a final decision on the permit.*

"9. Request for Contested Case Hearing—Summary. The fundamental decision of the MPCA is whether or not to issue a permit to the applicant, and if it is to issue a permit, under what conditions and limitations will the permit be issued. In this matter the MPCA has considered all of the information submitted in support of the request of the requester for a contested case hearing. In considering all of the information, the MPCA assumes that the MPCA staff, the petitioner for a contested case hearing, and the permittee would present testimony and evidence constituting the information that would support the same conclusions presently advocated by each. To the extent that the information presented justified modifications to the proposed draft permit, those modifications have been made in the final permit. To the extent that the information presented has not resulted in further modification of the proposed permit, the MPCA finds that further examination of this information in a contested case proceeding would not aid the MPCA in making a final decision. *The possibility that more information may in the future become available is not sufficient reason to hold a contested case hearing. The MPCA has authority to examine and reasonably respond to new information when it becomes available.* If further action on the permit issued by the MPCA is warranted and necessary as a result of new information, the MPCA can take appropriate action.

(Emphasis added).

*Issuance of the Permit.*

"10. The MPCA's decision to issue the proposed permit is governed by its permit rule, Minn. rule pt. 7001.0140, which provides:

Subpart 1. Agency action. Except as provided in subpart 2, the agency shall issue, reissue, revoke and reissue, or modify a permit if the agency determines that the proposed permittee or permittee will, with respect to the facility or activity to be permitted, comply or will undertake a schedule of compliance to achieve compliance with all applicable state and federal pollution control statutes and rules administered by the agency, and conditions of the permit and that all applicable requirements of Minnesota Statutes, chapter 116D and the rules promulgated under Minnesota Statutes, chapter 116D have been fulfilled.

Subpart 2. Agency findings. The following findings by the agency constitute justification for the agency to refuse to issue a new or modified permit, to refuse permit reissuance, or to revoke a permit without reissuance:

A. that with respect to the facility or activity to be permitted, the proposed permittee or permittees will not comply with all applicable state and federal pollution control statutes and rules administered by the agency, or conditions of the permit;

B. that there exists at the facility to be permitted unresolved noncompliance with applicable state and federal pollution control statutes and rules administered by the agency, or conditions of the permit and that the permittee will not undertake a schedule of compliance to resolve the noncompliance;

C. that the permittee has failed to disclose fully all facts relevant to the facility or activity to be permitted, or that the permittee has submitted false or misleading information to the agency or to the director;

D. that the permitted facility or activity endangers human health or the environment and that the danger cannot be re-

moved by a modification of the conditions of the permit; or

E. that all applicable requirements of Minnesota Statutes, chapter 116D and the rules promulgated under Minnesota Statutes, chapter 116D have not been fulfilled.

"11. Proper operation of the proposed Facility will achieve compliance with all applicable State and federal pollution control statutes and rules and the conditions of the permit and will not pose a danger to public health. The requirements for environmental review pursuant to Minn.Rules ch. 4410 have been satisfied."

John Falconer, Michael Martini, Earth Protector, and a group of concerned citizens from Red Wing filed a petition of certiorari to the Minnesota Court of Appeals on August 28, 1987 to seek review and reversal of the MPCA's denial of the request for a contested case hearing and its issuance of the permit.

## ISSUES

I. Did the MPCA properly deny petitioners' request for a contested case hearing?

II. Did the MPCA properly issue the RDF permit to NSP?

## ANALYSIS

### I.

The standard of review of agency action is provided in Minn.Stat. § 14.69 (1986):

In judicial review under sections 14.63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Petitioners claim the MPCA decision was arbitrary and capricious, an error of law and was unsupported by substantial evidence.

The crux of the issue is whether the agency can legally deny petitioners' request for a contested case hearing where they have raised a material fact issue for which no hard data currently exists which would aid in its resolution, but when the MPCA agrees that more information must be gathered.

Petitioners argue that (a) the denial of the request for a contested case hearing is contrary to rule 7001.0130; (b) the agency's interpretation of its rule is contrary to its clear meaning and thereby constitutes interpretive rule making; (c) the standards and design developed in the permit have broad implications in the handling of fugitive ash emissions and constitute rules made contrary to the procedures of chapter 14; and (d) petitioners are guaranteed a right to a "meaningful" hearing under the environmental policy act.

### A. *Rule 7001.0130*

█ Petitioners claim that the MPCA's conclusion that a contested case would not aid in making a final determination is "directly contrary" to the agency's findings that there is potential for adverse health effects and that further analysis is necessary. Petitioners claim that this "contradiction" can be explained only as follows:

Either that the Agency found that the petitioners would be unable to bring any helpful information to the hearing in the form of expert testimony or cross examination or that any information, no matter what it was, would not change the conclusions of the Agency.

The first rationale, petitioners argue, is unsupported by the evidence; there is no evidence to show that the information is unavailable or unobtainable by petitioners. They claim that even if the data is unavailable, that is not a proper basis for denying

a contested case. Rule 7001.0130 provides only that there should be a "reasonable basis" underlying the issues of fact so that holding a contested case "could aid" the agency in its final decision. Petitioners assert that the purpose of the hearing is not solely to give the parties an opportunity to present more information, but also to have the facts evaluated by the agency through a formal "quasi-judicial" process. This process contains important benefits to the parties, they argue, including discovery, subpoena rights, cross-examination, the opportunity to present argument and facts, and, an impartial tribunal to evaluate the facts. Petitioners also argue that expert testimony should be considered on RDF disposal because of the technical nature of the issue. The informal process used by the MPCA did not allow for expert testimony.

The second rationale, they allege, is arbitrary and capricious and shows that the agency's decision was an exercise of its will rather than its judgment. Petitioners claim that the agency is developing ash management on a piecemeal basis when the public interest requires a comprehensive look at the potential environmental risks posed by RDF ash disposal. Thus, they claim, the agency has exercised its will by refusing to allow a contested case hearing.

Petitioners are persuasive in their claim that expert testimony would aid in the resolution of this technical problem, particularly in light of the lack of hard data and the agency's own statement that more information is needed. However, they failed to provide the agency or this court with any specific expert's names or with any indication of what specific *new facts* an expert might testify to at a contested case hearing. We agree with the MPCA that petitioners have not raised any fact issues which could be resolved in a contested case hearing. As intervenor NSP points out, petitioners have the burden of demonstrating the existence of material facts that would aid the agency before they are entitled to a contested case hearing. They have not done so.

B. *Rulemaking*

Petitioners also urge reversal on the grounds that the agency's interpretation of rule 7001.0130 is contrary to its clear meaning and thus constitutes rulemaking. *See White Bear Lake Care Center, Inc. v. Minnesota Department of Public Welfare,* 319 N.W.2d 7 (Minn.1982) (failure to comply with necessary procedures results in invalidity of a rule). They allege that the MPCA's findings that "the requester [has] not produced any additional information that would result in further modification of the permit" and "that no additional information [will] be gathered during a contested case hearing that would result in further modification of the permit" changed the analysis of rule 7001.0130, reasoning in their brief that:

> Criteria C talks in terms of a reasonable basis underlying the *issues* of fact raised so that the Agency would be *aided* by a contested case hearing. This analysis is changed by the order to one which looks to whether the requests at the *time of the request* has brought evidence which would *change* a decision of the Agency at the close of a contested case or whether the Agency believes there exists *any additional information* which if brought in a contested case hearing would *change* the decision of the Agency.

\* \* \* \* \* \*

The Agency can be aided in making its final decision in many ways short of changing its ultimate decision. A more complete, thorough and supportable rationale can be developed through the contested case hearing. Specific findings which support the ultimate decision can be delineated and added to by the information brought in the contested case process. The decision by the hearing examiner may aid the Agency by providing a different perspective, rationale or clear parameters on the scope of the decision.

The MPCA denies it engaged in rulemaking and argues it merely applied the rule. On the basis of information currently available, the agency argues, a contested case would not aid the decisionmaking process.

Alternatively, the agency argues, even if it inadvertently created "policy," this court should uphold the ruling if rule 7001.0130 was correctly applied. *See In Re Application of Peoples Natural Gas Co.*, 389 N.W. 2d 903, 904 (Minn.1986) ("that MPUC may have articulated its construction of a statute in a rule improperly promulgated does not render a correct interpretation incorrect").

NSP claims that petitioners did not present the rulemaking argument to the agency. Further, it claims the agency has not promulgated a new rule because its interpretation corresponds with the plain meaning of the rule. *See Cable Communications Board v. Nor–West Cable Communications Partnership*, 356 N.W.2d 658 (Minn.1984).

We agree that this was simply "an issue without facts." Petitioners' view would mandate a hearing even absent contested facts.

### C. *Permit Standards*

Petitioners also claim the permit standards constitute rulemaking as defined in Minn.Stat. § 14.02, subd. 4. (1986); they claim the standards have general applicability and future effect. We are not persuaded that the permit standards constitute rulemaking.

### D. *Environmental Rights Act and Environmental Policy Act*

■ Petitioners contend that the Environmental Rights Act and the Environmental Policy Act guarantee them a right to a "meaningful hearing" which they claim they were denied. In support, petitioners point to the broad statement of purpose in Minn.Stat. § 116B.01 (1986) which grants all Minnesota citizens the "right to the protection, preservation, and enhancement of air, water, land, and other natural resources located within the state." They further cite the portion of the statute which states that "it is in the public interest to provide an adequate civil remedy." *See id.* Judicial review of agency decisions through the Minnesota Administrative Pro-

cedures Act under these acts is provided in Minn.Stat. § 116B.09, subd. 3 (1986).

These environmental acts alone do not create the right to a contested case hearing, however. It is through Rule 7001.0130 that the right is attained. *See In Re Implementation of Utility Energy Conservation Improvement Programs*, 368 N.W.2d 308, 312 (Minn.Ct.App.1985).

### II.

Petitioners claim that the agency's issuance of the RDF permit was arbitrary and capricious where it has admitted it cannot fully evaluate at present the adverse environmental effects of RDF disposal. However, the agency acknowledged that fact, required further study and also provided for continuous monitoring of the plant and numerous safeguards in its design.

Furthermore, the MPCA has no authority under rule 7001.0140 to deny a permit which otherwise complies with all applicable laws and regulations, solely because the MPCA believes that further study of an issue is warranted. Rule 7001.0140 establishes the types of findings which justify, among other things, refusal to issue a permit. Unless the findings are made, the rule states that the agency "shall" issue the permit if it determines that the proposed permittee will comply with applicable state and federal statutes and rules. The MPCA points out that it made contrary findings: that proper operation of the proposed facility will achieve compliance with all applicable pollution control statutes and rules and the conditions of the permit and will not pose a danger to public health. These findings support the issuance of the permit. Under these circumstances, we defer to the agency's decision to grant the permit. *See Reserve Mining Co. v. Herbst*, 256 N.W.2d 808 (Minn.1977).

### DECISION

The agency's decision to deny petitioners' request for a contested case hearing complied with rule 7001.0130. The agency

properly granted NSP the RDF disposal permit.

Affirmed.