**In the Matter of AMENDMENT NO. 4 TO AIR EMISSION FACILITY PERMIT NO. 202I–85–OT–1 for the Northern States Power Company Wilmarth Generating Plant in Mankato, Blue Earth County, Minnesota.**

No. C0–89–1127.

Supreme Court of Minnesota.

April 27, 1990.

---

Carla C. Kjellberg, St. Louis Park, for Earth Protector, Inc.

Hubert H. Humphrey, III, Atty. Gen., Ann M. Seha, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Pollution Control Agency.

Joann M. McGuire, Minneapolis, and Michael J. Ahern, Moss & Barnett, Minneapolis, for NSP.

COYNE, Justice.

We granted the separate petitions of the Minnesota Pollution Control Agency and Northern States Power Company to consider the propriety of a decision of the court of appeals remanding this matter to the MPCA for a contested case hearing. *Matter of Air Emission Facility Permit*, 450 N.W.2d 617, 623 (Minn.App.1990). We reverse.

Northern States Power has owned and operated the Wilmarth Generating Plant, a steam electric generating station located in Mankato, since 1947. In 1985, the MPCA issued a 5–year permit authorizing NSP to operate the plant with refuse-derived fuel at a rate of 850 tons per day with designated pollution control equipment. Earth Protector, Inc., a for-profit corporation, requested a contested case hearing at the time, but the request was denied and the plant has been in operation under the conditions of the permit since that time.

In July 1988, tests of the plant's emissions conducted by the MPCA demonstrated a violation of permit limitations regarding "opacity," defined as "the degree to which emissions reduce the transmission of light and obscure the view of an object in the background." Minn.R. 7005.0100, subpt. 29 (1989). The MPCA issued a notice of violation to NSP in November 1988 directing it to reduce the plant load to an acceptable level of opacity, to explain the reasons for the violations, to explain its proposed remediation and to obtain necessary additional pollution control devices before returning to permit-level capacity. Northern States Power responded by reducing its load to one-half of that originally authorized and informing the agency of its earlier efforts to identify new equipment which would satisfy the opacity limitations. Recognizing that the pollution control devices in use at that time could not be modified or upgraded to produce the desired results, NSP ultimately filed a formal request in February 1989 for an amendment of its operating permit to allow the installation of new pollution control equipment.

The record discloses that, following the publication of the July 1988 air emission test results, a petition signed by 2,234 individuals and demanding the immediate shutdown of the Wilmarth plant, was presented to the agency at its November 1988 meeting. The agency took no formal action on the petition but commenced a prompt investigation into potential health and environmental concerns.

In March 1989, the MPCA issued its proposed permit amendment imposing additional requirements on NSP, including that it develop and implement an acid gas control plan, that it limit dioxin/furan emis-

sions and that it reduce particulate matter emissions. The agency then published the proposal to allow public comment. At NSP's request, the comment period was extended and a public informational meeting was conducted in Mankato by agency staff. Eight individuals commented on the proposal, but records indicate that not one person announced specific opposition to the agency plan. The formal comment period produced 24 letters signed by 53 individuals, only 2 of which requested that the proposed permit amendment be denied. Two requests for a contested case hearing pursuant to Minn.R. 7001.0130 (1989) were received by the agency, but after one was withdrawn, only that of Earth Protector remained.

By its order of June 26, 1989, the agency denied Earth Protector's request for a contested case hearing, denied the petition to shut down the plant for violations of the Clean Air Act and approved the issuance of Amendment No. 4 to the permit to allow the installation by NSP of new air pollution control equipment at the plant. The agency supported its decision by extensive and technical findings.

Earth Protector, Inc. obtained a writ of certiorari pursuant to Minn.Stat. § 115.05, subd. 11 (1988) to review the decision and the court of appeals reversed and remanded for a contested case hearing, concluding that such a hearing would aid the agency in making its final permit determination. *See* Minn.R. 7001.0130, subpt. 1(C) (1989).

After the January 23, 1990 filing of the decision of the court of appeals, the MPCA informed NSP by letter that, while the appellate court did not address the status of the permit amendment, it had internally determined to treat the amendment as vacated by operation of the directive that it hold a contested case hearing. Northern States Power has petitioned this court for a writ of prohibition restraining this action by the MPCA. While the MPCA did not oppose the petition, this court stayed consideration pending this decision on the merits of the separate appeals of the MPCA and NSP. It is necessary to comment that

one of the bases of NSP's petition is that the vacation of the permit will substantially and significantly delay environmental benefits to be achieved by the installation of the new pollution control devices.

Minnesota Rule 7001.0130, subpart 1 (1989) designates the circumstances under which an agency is required to conduct a contested case hearing:

**7001.0130 Contested Case Hearing.**

Subpart 1. **Required hearing.** The agency shall hold a contested case hearing if it finds all of the following:

A. that a person requesting the contested case hearing has raised a material issue of fact or of the application of facts to law related to the commissioner's preliminary determination or the terms of the draft permit;

B. that the agency has jurisdiction to make determinations on the issues of fact or of the application of facts to law raised by the person requesting the contested case hearing; and

C. that there is a reasonable basis underlying issues of fact or law raised by the person that requests the contested case hearing such that the holding of a contested case hearing would aid the agency in making a final determination on the permit application.

While the rule provides that all three criteria must be established to demonstrate entitlement to a contested case hearing, the third criterion has created, in this case, the greatest area of dispute. It is to that criterion then that this inquiry is directed.

The court of appeals acknowledged that Earth Protector "has not made a presentation of evidence that, by itself, would prompt a contested case hearing." *Matter of Air Emission Facility Permit*, 450 N.W.2d 617, 620 (Minn.App.1990). It then nevertheless concluded that because evidence does exist on material questions raised, a hearing would aid the agency in its final determination. *Id.* (citing *Matter of NSP Red Wing Ash Disposal Facility*, 421 N.W.2d 398 (Minn.App.1989), *pet. for*

*rev. denied* (Minn., May 18, 1988)). In the view of the court of appeals, the mere fact that some evidence may exist as to beneficial alternatives is sufficient to require a contested case hearing and the petitioner is relieved of any burden in this regard. We disagree.

As in the *Red Wing* matter, Earth Protector has identified no experts, has submitted no new evidence and has cited no convincing authority that would demonstrate that a contested case hearing would assist the MPCA in making a final determination on the permit amendment. It is simply not enough to raise questions or pose alternatives without some showing that evidence can be produced which is contrary to the action proposed by the agency.

Because we view this deficiency as dispositive, we need not address the propriety of the other bases on which the court of appeals relied in directing the agency to hold a contested case hearing. It is necessary to comment, however, that in our view, the agency did afford the process the necessary "hard look" it deserved in defining a permit to minimize or eliminate identified pollution control problems. *See Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977).

The petition of NSP for a writ of prohibition to restrain the MPCA from vacating the permit amendment has been, by operation of this decision, rendered moot and is denied.

Reversed.