**In the Matter of the Application for COMBINED AIR AND SOLID WASTE PERMIT NO. 2211–91–OT–1 for the Dakota County Mixed Municipal Solid Waste Incinerator.**

**Nos. C8–92–9, C7–91–2551.**

Court of Appeals of Minnesota.

Aug. 25, 1992.

Review Denied Oct. 28, 1992.

Se also 483 N.W.2d 105.

Hubert H. Humphrey, Atty. Gen., Eldon G. Kaul, Asst. Atty. Gen., Ann M. Feha, Special Asst. Atty. Gen., St. Paul, for respondent Minnesota Pollution Control Agency.

Barbara J. Blumer, Eagan, for respondent Dakota County Citizens Against Burning.

John E. Gryzbek, Gryzbek and Associates, P.A., St. Paul, for respondent Clean Water Action.

Lawrence J. Coleman, St. Paul, for respondent Earth Protector, Inc.

Jay M. Heffern, St. Paul, for amicus Metropolitan Council.

Charles K. Dayton, Leonard Street & Deinard, Minneapolis, James C. Backstrom, Dakota County Atty., Karen A. Schaffer, and Jay R. Stassen, Asst. County Attys., Hastings, for appellant Dakota County.

Richard Ihrig, Lindquist & Vennum, Mary P. McConnell and Jessica S. Wave, Minneapolis, for appellant ABB Resource Recovery Systems Combustion Engineering, Inc.

Duncan J. McCampbell, Lind Jensen & Sullivan, Minneapolis, for amicus Minnesota Resource Recovery Ass'n.

Considered and decided by SHORT, Presiding Judge, CRIPPEN, Judge, and SCHUMACHER, Judge.

## OPINION

SHORT, Judge.

The Minnesota Pollution Control Agency (MPCA) denied an application for a permit to construct and operate a solid waste incinerator facility in Dakota County. Dakota County (county) and ABB Resource Recovery Systems Combustion Engineering, Inc. (operator) filed separate appeals, and we consolidated the matters. On appeal, the county and the operator argue the MPCA's decision (1) is not supported by substantial evidence, (2) is based on an error of law, and (3) is affected by improper procedures which violate their rights to due process. We reverse.

## FACTS

The Minnesota legislature decided landfilling of unprocessed mixed municipal solid waste, with limited exception, should be prohibited after 1990. Minn.Stat. § 473.-848 (Supp.1985). It requires the Metropolitan Council (council) to adopt a long range policy plan for solid waste management. Minn.Stat. § 473.149, subd. 1 (1990). The council in turn ordered each metropolitan county to manage 80 percent of its solid waste through centralized processing by 1990. The legislative scheme assigns responsibility and choice of technology for solid waste management to each metropolitan county. *See* Minn.Stat. § 473.803, subd. 1 (1990).

The county prepared a solid waste master plan to implement the council's long range policy plan. *See id.* That plan included construction of a resource recovery facility of unspecified technology. The council approved the county's plan in 1987. In 1988, the county contracted with the operator to design, develop, and operate a resource recovery facility capable of processing 640 tons of solid waste and producing 18 megawatts of electricity daily.

As required by Minn.Stat. § 116D.04, subd. 2a (1990), the council prepared an Environmental Impact Statement (EIS) for the proposed incinerator. Based upon the EIS, the council found there were no feasible and prudent alternatives to the proposed facility. The council also determined the incinerator was consistent with its long range policy plan and that its capacity was necessary to manage solid waste in the county and the metropolitan area. The MPCA,[1] through its staff, participated in the environmental review of the proposed facility. The MPCA stated the EIS was adequate and that a thorough analysis of the alternatives had been completed by the council. The council approved the EIS in 1990.

The operator and the county jointly applied to the MPCA for a permit for the proposed facility. The MPCA staff concluded the proposed incinerator (a) complied with all state and federal environmental rules, (b) would not cause pollution, impairment, or destruction of natural resources, and (c) would not have a negative

1. The MPCA is a part-time citizens board appointed to four-year terms by the governor. Minn.Stat. §§ 116.02, subd. 1 (1990), 15.0575, subd. 2 (1990). A full-time technical staff supports the board. *See* Minn.Stat. § 116.03, subd. 2 (1990).

impact on the region's ability to meet its recycling goals. The staff then issued a draft permit for public comment. The draft permit included emission limitations for all regulated pollutants and requirements for installation of pollution control equipment, operator training, environmental monitoring, materials separation, ash management, recordkeeping, continuous emissions monitoring and compliance testing.

This permit application was very controversial. Thousands of pages of documentary evidence and argument were submitted to the MPCA. The MPCA extended the public comment period by three months. Public meetings were held on May 22, September 6 and 19, 1991. On September 24 an alternative operator, Recomp Inc., submitted an application to the MPCA for a permit for a 400 ton per day composting facility.

Prior to the November MPCA board meeting, the MPCA staff was directed to prepare alternative sets of findings and conclusions. At the November meeting a board member presented nine pages of new amendments concerning alleged pollution caused by mercury, dioxin, and waste ash from the incinerator. The board allowed a brief recess to enable persons at the meeting to review the amendments. The county protested the procedure. The MPCA then voted 5–4 to deny the permit based upon its conclusions that (a) the proposed facility is likely to cause pollution, impairment or destruction of natural resources in the state, and (b) there is a feasible and prudent alternative, the proposed Recomp facility.

### ISSUES

I. Was the MPCA's decision supported by substantial evidence in view of the entire record?

II. Was the MPCA's decision based on an error of law?

III. Was the MPCA's decision made upon unlawful procedure?

### ANALYSIS

Agency decisions are presumed to be correct by reviewing courts, and will be reversed only when they reflect an error of law or when the findings are unsupported by substantial evidence or are arbitrary and capricious. *See* Minn.Stat. § 14.69 (1990); *Crookston Cattle Co. v. Minn. Dep't of Natural Resources,* 300 N.W.2d 769, 777 (Minn.1980). We defer to the agency's expertise in fact finding, and will affirm a decision if it is lawful and reasonable. *See Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824–27 (Minn.1977).

### I.

■ The MPCA found that (a) mercury and dioxin emissions and incinerator ash from the proposed facility would pollute, impair, or destroy natural resources, and (b) there is a feasible and prudent alternative to the proposed facility. The operator and county argue that decision is not supported by substantial evidence in view of the entire record. An agency finding is supported by substantial evidence if the evidence, considered in its entirety, is (1) more than a scintilla of evidence; or (2) such that a reasonable mind might accept it as adequate to support a conclusion; or (3) more than "some evidence" and more than "any evidence." *Id.* at 825.

### A. Mercury and Dioxin Emissions and Incinerator Ash

■ The MPCA found "the bioaccumulation of mercury in fish is a matter of serious concern." In a case where an application for a permit is denied despite compliance with all state and federal standards for emissions, we would expect an agency's findings of pollution to be specific and persuasive. A generalized concern about the possible environmental effect of a pollutant is insufficient to support denial of a permit. *In re Solid Waste Permit for the NSP Red Wing Ash Disposal Facility,* 421 N.W.2d 398, 405 (Minn.App.1988), *pet. for rev. denied* (Minn. May 18, 1988) [hereinafter *Red Wing* ]. Absent a specific finding, the MPCA's speculation does not support deni-

al. *See Reserve Mining,* 256 N.W.2d at 829.

■ The county and operator also argue the MPCA's finding of impairment due to dioxin emissions is not supported by the evidence. First, they claim the MPCA used an aquatic hazard index for dioxin in the Vermillion River wetlands, not the river itself. Second, the MPCA miscalculated the ecological hazard index. And third, the MPCA's finding was based on a first order screening, which produces a very conservative analysis. While the agency does not disagree with these allegations, it states that pollution from dioxin emissions exists. However, the agency has brought forth no "hard" evidence to support its finding. Because the agency found the dioxin emissions will be within applicable federal and state standards, there is no basis for making a finding of pollution. *See Red Wing,* 421 N.W.2d at 405.

The MPCA also found the 192 tons of ash per day produced by the proposed facility will cause pollution. The record demonstrates (a) the facility would have been governed by the MPCA's temporary ash management program, (b) the ash produced would be disposed of at a separate facility, (c) the separate disposal facility would be subject to a separate permit proceeding, (d) that second permit proceeding must be completed before construction begins on the proposed incinerator, and (e) the facility would be subject to MPCA's final regulations, even if more stringent than the temporary rules. Under these facts, the MPCA finding on ash is not supported by substantial evidence.

### B. Feasible and Prudent Alternative

■ The MPCA concluded the proposed Recomp composting facility was a feasible and prudent alternative under Minn.Stat. § 116D.04, subd. 6 (1990). We disagree. During the permitting process a dispute arose on the issue of whether Recomp was a "food composting" or a "mixed waste composting" facility. We need not resolve this issue since in either case Recomp does not qualify as a feasible and prudent alternative. If Recomp is a "food composting"

facility as MPCA suggests, then it has insufficient capacity to affect the total waste stream in Dakota County because only 1.5 percent of the waste stream consists of food capable of being composted. Given that capacity, it is difficult to see how Recomp could qualify as a feasible and prudent alternative to a 640 ton per day capacity facility. If Recomp is a mixed waste composting facility as the council suggests, it is not entitled to preference over a proposed incinerator. *See* Minn. Stat. § 115A.02 (1990).

In addition, the viability of the Recomp facility is speculative at best on the record before us. There is "no need to consider an alternative solution 'whose effect cannot be reasonably ascertained, and whose implementation is deemed remote and speculative.'" *Reserve Mining,* 256 N.W.2d at 829–830 (quoting *Life of the Land v. Brinegar,* 485 F.2d 460, 472 (9th Cir.1973) (citation omitted)). Recomp has yet to undergo any of the major steps in the lengthy environmental review process. MPCA admits the viability and prospects for development of an alternative facility such as Recomp is uncertain.

■ Finally, in order to qualify as feasible and prudent, the alternative facility must be environmentally superior to the proposed action. *Cf. id.* at 829 (discussing environmental risk associated with alternative site). MPCA made no finding that, if developed, Recomp would be environmentally superior to the proposed facility. Under these facts, the MPCA's finding concerning a feasible and prudent alternative is not supported by substantial evidence.

### II.

■ The MPCA concluded operation of the proposed facility is "likely to cause pollution, impairment, or destruction of natural resources" because incinerating solid wastes "is likely to interfere with statutory recycling goals and with statutorily favored waste management options." The operator and the county argue MPCA acted without statutory authority and its decision is therefore based on an error of law. We agree.

First, Minn.Stat. § 115A.02(b) expresses goals and preferences for waste management.

> The waste management *goal* of the state is to foster an integrated waste management system in a manner appropriate to the characteristics of the waste stream. The following waste management practices are in order of *preference:* (1) waste reduction and reuse; (2) waste recycling; (3) composting of yard waste and food waste; (4) resource recovery through mixed municipal solid waste composting or incineration; and (5) land disposal.

(Emphasis added.) The statute does not contain a legislative mandate that one waste management practice be followed before another. While an alternative is preferred over those that follow it, an alternative need not be exhausted before the next can be considered. *See Hearing on S.F. No. 95 Before the Subcomm. on Environmental Protection of the Senate Comm. on Environment and Natural Resources* (March 31, 1989).

Second, MPCA is without statutory authority to contradict a finding by the council that the proposed facility is consistent with the goals set forth in Minn.Stat. § 115A.02. Agencies only have the authority expressly provided by the legislature. *See* Minn.Stat. § 14.69(b). While the MPCA has a regulatory role in the metropolitan area of determining whether the proposed facility meets the technical criteria contained in MPCA rules, the council is in charge of planning, supervising, and coordinating solid waste management policies in the metropolitan area. *See* Minn. Stat. §§ 115A.02, 473.149 (1990), 473.803 (1990).

The legislature directed the council to adopt a long range policy plan for solid waste management in the metropolitan area which incorporates the preference list found in Minn.Stat. § 115A.02.

> The metropolitan council shall prepare and by resolution adopt as part of its development guide a long range policy plan for solid waste management in the metropolitan area. When adopted, the plan shall be followed in the metropolitan area. The plan shall address the state policies and purposes expressed in section 115A.02. * * * The plan shall include goals and policies for solid waste management, including recycling consistent with section 115A.551, and household hazardous waste management consistent with section 115A.96, subdivision 6, in the metropolitan area and, to the extent appropriate, statements and information similar to that required under section 473.146, subdivision 1.

Minn.Stat. § 473.149, subd. 1. The legislature also directed the council to determine whether a proposed facility is consistent with its long range policy plan.

> The agency shall issue the permit only if the capacity of the facility is consistent with the needs for resource recovery or disposal capacity identified in the approved plan or plans. Consistency must be determined by the metropolitan council for counties in the metropolitan area and by the agency for counties outside the metropolitan area.

Minn.Stat. § 116.07, subd. 4j(a) (1990). Assuming the council's long range policy plan properly incorporates the preference list and recycling goals, a finding by the council that a proposed facility is consistent with its long range policy plan necessarily implies the facility is consistent with the preference list and recycling goals.

■ The record demonstrates the council (a) consulted with the MPCA in preparing, adopting and amending its long range policy plan; (b) found the proposed facility was needed as part of the metropolitan area's integrated waste management system; and (c) determined, with input from MPCA staff, that the proposed facility was consistent with the preference list and recycling goals contained in Minn.Stat. § 115A.02. Where the council made this finding under specific statutory authority, the MPCA is foreclosed from making a contradictory finding during the permit regulation process.

■ The MPCA argues it has general statutory authority under Minn.Stat. § 116D.04, subd. 6 to deny a permit based

on an alleged conflict with the preference list. We disagree. That section provides:

No state action significantly affecting the quality of the environment shall be allowed, nor shall any permit for natural resources management and development be granted, where such action or permit has caused or is likely to cause pollution, impairment, or destruction of the air, water, land or other natural resources located within the state, so long as there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety, and welfare and the state's paramount concern for the protection of its air, water, land and other natural resources from pollution, impairment, or destruction. Economic considerations alone shall not justify such conduct.

Minn.Stat. § 116D.04, subd. 6. While that statute gives MPCA general regulatory authority, particular laws prevail and are construed as exceptions to general provisions when interpreting statutes. Minn.Stat. § 645.26, subd. 1 (1990). To the extent there is an overlap in authority between the MPCA and the council on whether a proposed facility is in accordance with the council's long range policy plan, the council has the specific grant of legislative authority. Minn.Stat. § 473.823, subd. 3(b) (1990) provides in relevant part that:

[a] permit may not be issued for the operation of a solid waste facility in the metropolitan area which is not in accordance with the metropolitan council's solid waste policy plan. The metropolitan council shall determine whether a permit is in accordance with the policy plan.

Where the council made a finding that the proposed facility is consistent with its long range policy plan, the MPCA is foreclosed from making a contradictory finding. The MPCA's decision that operation of the proposed facility is likely to cause pollution, impairment, or destruction of natural resources because incinerating solid waste necessarily forecloses managing through recycling and other preferred practices is based on an error of law.

III.

The county and the operator also argue the MPCA's decision should be reversed because it is arbitrary and capricious. *See* Minn.Stat. § 14.69(f). An agency decision is arbitrary and capricious when it represents the agency's will and not its judgment. *Markwardt v. State, Water Resources Bd.*, 254 N.W.2d 371, 374 (Minn. 1977) (citing *Bryan v. Community State Bank*, 285 Minn. 226, 172 N.W.2d 771 (1969)).

The record demonstrates that while the permit application was pending: (a) opponents of incinerators, including one MPCA board member, supported proposed legislation to impose a moratorium on constructing additional solid waste incinerators; (b) the governor sought legal advice on whether he could prevent the MPCA from issuing a permit to the operator; (c) the attorney general advised the governor that such an executive order would be unlawful; (d) after reviewing draft findings, a MPCA board member asked the attorney general's office to prepare additional findings that would support denial of the permit; (e) nine additional pages of proposed findings which altered the basis for denying the permit were prepared just prior to the board meeting; (f) the existence of these additional findings was not disclosed until immediately prior to the final board vote; (g) the county was given only three minutes to respond to the "surprise" findings; and (h) the MPCA board denied the permit on a 5–4 vote. Under these facts, the agency's decision was affected by procedural irregularities. However, given our resolution of the preceding issues, we need not decide if the MPCA was engaged in "reasoned decision making" or was acting on "its will, not its judgment." *See Reserve Mining*, 256 N.W.2d at 825; *Markwardt*, 254 N.W.2d at 374. Regardless of whether the decision is arbitrary and capricious, it cannot stand because it is unsupported by substantial evidence and is based on an error of law.

DECISION

The MPCA's findings of pollution based on mercury and dioxin emissions and incin-

erator ash are not supported by evidence in the record. In addition, Minn.Stat. § 115A.02(b) expresses legislative goals and preferences for waste management in metropolitan counties. The MPCA's decision to deny the permit to build an incinerator in Dakota County based on that statute is erroneous as a matter of law. Because the decision to deny the permit is unsupported by substantial evidence and is based on an error of law, the decision must be reversed. We remand to the agency for issuance of the permit.

Reversed and remanded.