696 N.W.2d 398 (2005)
MINNESOTA CENTER FOR ENVIRONMENTAL ADVOCACY, Relator,
v.
COMMISSIONER OF MINNESOTA POLLUTION CONTROL AGENCY, Respondent,
City of St. Cloud, Respondent.
No. A04-1323.
Court of Appeals of Minnesota.
May 24, 2005.
*400 Janette K. Brimmer, Minnesota Center for Environmental Advocacy, St. Paul, MN, for relator.
Mike Hatch, Attorney General, Robert B. Roche, Assistant Attorney General, St. Paul, MN, for respondent Commissioner of Minnesota Pollution Control Agency.
Christopher M. Hood, Steven W. Nyhus, Flaherty & Hood, P.A., St. Paul, MN, for respondent City of St. Cloud.
Considered and decided by WILLIS, Presiding Judge, STONEBURNER, Judge, and CRIPPEN, Judge.

OPINION
CRIPPEN, Judge.[*]
This appeal challenges administrative approval of a wastewater treatment permit by respondent Minnesota Pollution Control Agency (the agency). Relator Minnesota Center for Environmental Advocacy argues that (1) the agency changed its construction of Minn. R. 7050.0211, subp. 1a (2003) (phosphorus removal rule), in a manner that is arbitrary, resulting in the Coon Rapids Dam Pool not being protected as a reservoir; (2) the agency's test for determining whether allowing the treatment plant would affect the reservoir is too narrow; and (3) the agency improperly put the burden of proof on those opposing the permit rather than on the applicant, and the applicant did not carry that burden. We affirm.

FACTS
Excessive amounts of algae can decrease water quality, and phosphorus can prompt the growth of algae. In the 1970's, the agency adopted a rule stating that "[w]here the discharge of effluent is directly to or affects a lake or reservoir, phosphorus removal to one milligram per liter [1mg/L] shall be required." Minn. R. 7050.0211, subp. 1a (2003). The rule does not define "affect," nor does it define "reservoir." In its initial applications of the phosphorus rule, the agency (1) interpreted "affect" to require a measurable impact on the water in question; and (2) used a 50-mile rule of thumb, under which bodies of water more than 50 miles downstream from a wastewater discharge site were deemed not affected by the discharge.
*401 Also in the 1970s, respondent City of St. Cloud (the city) obtained a permit to operate a water treatment plant that discharges wastewater into the Mississippi River. The discharge occurs more than 50 miles upstream from the Coon Rapids Dam Pool, a pool created by a dam on the Mississippi River at Coon Rapids. The city's permit must be renewed every five years, and the phosphorus rule is involved in the repermitting process. Lake Pepin and Spring Lake, other water bodies involved in these proceedings, are downstream from Coon Rapids.
As the result of the agency's 1996 study of the impact of phosphorus on the state's water systems, a 1997 task force report recommended that the phosphorus rule be modified to address the impact of phosphorus on rivers. The agency board did not vote on whether to adopt, as agency policy, the task force's recommendations. Although the agency has not formulated a policy on discharge affects on flowing river water, in March 2000, after various public meetings and comment periods, the agency promulgated a strategy that governs other specified affects (the phosphorus strategy).
The 2000 strategy (1) states that the agency will, under the phosphorus rule, require a 1 mg/L limit on phosphorus in wastewater discharge if the discharge affects a lake or reservoir and, under certain other circumstances, require a permit applicant to provide a phosphorus management plan; (2) defines "affects" and "measurable impact" in terms of the detrimental response to phosphorus in a body of water and the individual contribution of the discharge in causing any of certain defined adverse changes; (3) defines "lake" as a water body with a lake identification number supplied by the Minnesota Department of Natural Resources (DNR) in the DNR's Bulletin 25, "with some exceptions"; (4) recommends using water residence time (the amount of time water will spend within a given geographic feature) to determine whether navigational pools would be treated as a lake or as a river for purposes of the phosphorus rule; and (5) notes that the lake/navigational pool/residence-time aspects of the phosphorus strategy mean that the agency adopts the DNR list of lakes in Bulletin 25, with certain exceptions.
In the 2000 proceedings to renew the city's discharge permit, the agency made a preliminary determination to reissue the city's permit without a 1mg/L limit on the city's phosphorus discharge, requiring, instead, that the city submit a phosphorus management plan, with its next (2005) permit-renewal application. Relator sought, and the agency granted, a contested-case hearing on whether the city's discharge triggered the 1 mg/L limit on phosphorus discharge by affecting a lake or reservoir under the phosphorus rule. Relator essentially argued that (1) the city's discharge affects the Coon Rapids Dam Pool and Lake Pepin, among other downstream waters; (2) the dam pool is a reservoir under the phosphorus rule; and therefore (3) the phosphorus rule requires a 1mg/L limit on the phosphorus in the water discharged by the city's plant.
After discovery, the city moved for a summary determination, arguing that the phosphorus rule's discharge limit does not apply because, under the rule, the Coon Rapids Dam Pool is not a reservoir, and relator did not show that the city's discharge affects downstream waters. An administrative law judge (ALJ) then proposed a summary disposition in the city's favor. The proposed ruling assumed that the dam pool was a reservoir under the phosphorus rule for purposes of the motion but indicated that relator had not shown that the city's discharge affects downstream waters. The agency adopted the *402 proposed order. On relator's initial appeal, this court ruled that (1) the agency had partially misinterpreted the phosphorus rule, and a contested-case hearing was required to determine whether, under a correct reading of the rule, the city's discharge "affects" downstream waters; and (2) the contested-case hearing should also address whether the Coon Rapids Dam Pool is a reservoir for purposes of the phosphorus rule because that fact would impact whether the phosphorus rule is applicable to the pool. In Re City of St. Cloud Wastewater Treatment Facility, No. C3-03-75, 2003 WL 22136314, at *5 (Minn. App. Sept.12, 2003) (St. Cloud I).
On remand, the parties disagreed on who had the burden of proof. The ALJ issued a prehearing order stating relator had the burden of proof under Minn. Rules 1400.7300, subp. 5 (2003). After a hearing on the merits, the ALJ issued a proposed ruling that reaffirmed its prehearing ruling that relator had the burden of proof; ruled that, for purposes of the phosphorus rule, Coon Rapids Dam Pool is not a reservoir; and ruled that relator had not traced to the city's discharge any effects of phosphorus in downstream waters. With minor alterations, the agency adopted the proposed order.

ISSUES
1. Did the agency correctly rule that the Coon Rapids Dam Pool is not a reservoir?
2. Did the agency incorrectly place the burden of proof on relator?
3. Did the agency misapply the phosphorus rule in determining that relator failed to show that the city's wastewater discharge affects downstream waters?

ANALYSIS

I.
Based on its reading of the phosphorus rule to define a reservoir in terms of the residence time of the water, the agency ruled that the Coon Rapids Dam Pool is not a reservoir because the residence time of the water, which was found to be .44-1.9 days, is "too short to constitute a reservoir and [the Coon Rapids Damp Pool] does not have an adequate volume of water to support treatment of this feature as anything other than a stretch of river." Alleging the existence of preferable alternative methods for determining whether a body of water is a reservoir or should otherwise be protected by the phosphorus rule's limit on phosphorus discharge, relator challenges the agency's reading of the phosphorus rule. Although word meanings are generally a matter of law, "considerable deference" is given to the agency's construction of its own regulations; "[i]f a regulation is ambiguous, agency interpretation will generally be upheld if it is reasonable." St. Otto's Home v. Minn. Dep't of Human Servs., 437 N.W.2d 35, 40 (Minn.1989) (citations and footnote omitted).
Relator argues that the phosphorus rule should protect the Coon Rapids Dam Pool because the pool fits the general-parlance definition of reservoir, the water in the pool is used for recreation, and the phosphorus rule was intended to protect state waters used for recreation. Minn. R. 7050.0211, subp. 1a, the phosphorus rule, limits phosphorus discharge to 1 mg/L if the discharge at issue "is directly to or affects a lake or reservoir," is to be given its plain meaning. In re City of Owatonna's NPDES/SDS Proposed Permit Reissuance, 672 N.W.2d 921, 926 (Minn. App.2004). A plain reading of the rules shows that it applies to discharge affecting a lake or reservoir, but the rule does not include language making it relevant to assess the use to which the water in the *403 body is put; we reject relator's argument to the contrary. Cf. id. at 928 (noting that the agency erred by denying a contested-case hearing based in part on economic considerations because "the phosphorus rule does not take into account economic considerations").
Relator also notes that, in implementing the phosphorus strategy, the agency changed the analysis it used to determine whether a water body is a reservoir or otherwise protected by the phosphorus rule's discharge limit to begin considering whether the "residence time" of the water in question is at least 14 days. Relator argues that this was "a change in long-standing interpretation and practice" to an arbitrary 14-day residence-time rule. We initially note that before use of the 14-day residence-time rule of thumb, the agency used the 50-mile rule-of-thumb, and that standard would have deemed the Coon Rapids Dam Pool and waters further downstream unaffected by the city's discharge. Thus, even if we found cause to reinstate prior practice, this would not require imposition of the discharge limit that relator seeks.
In any event, much of relator's argument that the agency's use of a 14-day residence period is arbitrary involves evidence that algae responds positively to phosphorus, even in moving water like a river. Therefore, relator argues, this court should reject as unreasonable the agency's new residence-time based method of identifying the waters protected by the phosphorus rule's phosphorus discharge limit. For four reasons, we decline to do so. First, although the rule is phrased in terms of protecting "lakes" and "reservoirs" from the effects of phosphorus, relator's argument tries to use the possible effects of phosphorus to define bodies of water to be protected. We will not expand the coverage of the rule from "lakes" and "reservoirs" to bodies of water impacted by phosphorus. Second, the 14-day residence time standard is not absolute: consistent with case law, the agency admits that a 14-day residence-time is not a "litmus test" for determining whether a water body is reservoir and that the phosphorus strategy "is guidance only." See id. at 926 (stating the phosphorus strategy, "by its own terms, is `not intended to be a rule and does not create any rights, substantive or procedural.'"). Third, the agency's use of a 14-day residence time as a nondispositive factor in determining whether a body of water is a reservoir, shows that the agency's method of deciding what constitutes a reservoir is sufficiently flexible that it can address water bodies on a case-by-case basis. And relator does not explain how a decision can be arbitrary when the decision is made based on generally applicable guidelines that have sufficient flexibility to allow case-by-case determinations that will, even in unusual cases, achieve the goals that the rule and the strategy are meant to attain. Fourth, because the agency's use of a 14-day-residence-time guideline is reasonable, we are required to defer to its reading of any ambiguity in the rule. St. Otto's Home, 437 N.W.2d at 40.
Relator also challenges the agency's refusal to classify the Coon Rapids Dam Pool as a reservoir. Relator alleges that "Finding No. 46," which addresses the volume of the pool, is not supported by the record, and that, in any event, the record does not show that the volume of a body of water is relevant to whether that body of water should be protected by the phosphorus rule. But finding 46 addresses a phosphorus study done on Lake Pepin and does not mention the Coon Rapids Dam Pool. Also, whether a body of water is a reservoir permissibly requires consideration of the water's residence time. And the record shows that residence time is related to *404 the volume of water in the body of water at issue.[1]
The use to which water is put does not bear on the applicability of the phosphorus rule. Also, because the phosphorus rule is designed to protect lakes and reservoirs, the mere fact that water is affected by phosphorus does not necessarily require imposition of the phosphorus discharge limit of the phosphorus rule. Further, the agency's 14-day residence-time guideline for identifying affected lakes and reservoirs is not arbitrary. Therefore, we affirm the determination that the Coon Rapids Dam Pool is not a reservoir protected by the phosphorus discharge limit of the phosphorus rule.

II.
The agency ruled that "[a]s the party objecting to the action to be taken in this matter, [relator] has the burden of demonstrating that its proposed action is required by a preponderance of the evidence." Relator objects to this ruling, arguing that because the city is seeking the permit, it is the city's burden to show that the discharge limit in the phosphorus rule does not apply to its permit.
The rules regarding administrative proceedings state that "[t]he party proposing that certain action be taken must prove the facts at issue by a preponderance of the evidence, unless the substantive law provides a different burden or standard." Minn. R. 1400.7300, subp. 5 (2003). Here, the original discharge permit was issued in the 1970s, and the agency's proposed draft of the permit that would be (re)issued in these proceedings required the city to develop a phosphorus management plan but did not impose the limit established by the phosphorus rule; relator requested a contested-case hearing to determine, among other things, whether the phosphorus rule applied because discharge affected a lake or reservoir. St. Cloud I, No. C3-03-75, 2003 WL 22136314 at *2. Because it is relator rather than the city or the agency that is seeking to have the limit added to the permit, and because it is the imposition of that limit that is at issue in these proceedings, under Minn. R. 1400.7300, subp. 5, relator is the party proposing action and has the burden of proof.
Relator also argues that the city failed to submit any evidence regarding the effects of its water discharge in support of its application to reissue its permit. But the rules require the agency, after a permit application is complete, to make a preliminary determination regarding whether a permit will be issued. Minn. R. 7001.0100 (2003). And here, the agency's original preliminary determination was to reissue St. Cloud's permit, and relator was challenging the terms of that permit.[2]

III.
In addressing whether phosphorus "affects" a body of water, the agency determines *405 whether phosphorus creates a "measurable impact" in the adverse reactions to phosphorus by the lake or reservoir being considered and whether those adverse effects can be traced to a particular source of phosphorus. Relator argues that the agency's application of "affects" is too narrow and is contrary to the agency's recognition that algae can form in rivers before it reaches a lake or reservoir and "affect" the lake or reservoir when the river deposits the algae there. Because we affirm the decision that the Coon Rapids Dam Pool is not a reservoir for phosphorus-rule purposes, we do not address relator's argument on this point regarding the pool.
The agency is aware that algae can grow in a river, that its current phosphorus rule and phosphorus strategy do not adequately address the impact of phosphorus on rivers, and that questions still exist on that topic: the agency admits that the 1996 phosphorus study generated recommendations that the phosphorus rule be modified to address the impact of phosphorus on rivers. But these recommendations have not been adopted as policy by the agency. That the unmodified rule did not adequately address rivers is consistent with the discussion in the phosphorus strategy stating that
[when the phosphorus rule was] crafted in the 1970s little or no attention was paid to the impact of nutrients on flowing waters (i.e., rivers) because it was believed that the very short residence time or high turnover rates did not allow algae to fully utilize available nutrients and produce nuisance blooms. In recent years, other researchers (and we) have begun to take a closer look at nutrient impacts on flowing waters and have recognized that excess nutrients will contribute to algae growth in rivers. However, questions remain on [listing various questions].
To invoke the discharge limitation of the phosphorus rule because algae that grows in the Mississippi River between St. Cloud and Lake Pepin affects Lake Pepin would be to (1) require the agency to apply the phosphorus rule to a situation (river-grown algae) for which the rule was not designed; (2) impose the discharge limit when, despite not just an opportunity but a recommendation to apply the rule, the agency did not do so and did not do so because, among other things, the agency believes that there are significant unanswered questions about how phosphorus can and should be managed in rivers; and (3) ignore the fact that between St. Cloud's wastewater discharge and Lake Pepin, a substantial amount of phosphorus is discharged into the Mississippi River by the cities of Minneapolis and St. Paul. Under these circumstances, we will not require the agency to impose the phosphorus rule's discharge limit for lakes and reservoirs to St. Cloud's discharge into the Mississippi River simply because the effect the phosphorus has on the river (the river-grown algae) allegedly has an effect on downstream water bodies.
In addressing whether St. Cloud's discharge "affects" Lake Pepin, the agency required both that the St. Cloud's phosphorus discharge measurably affect the lake and that the effect be traceable to that discharge. Arguing that a mere phosphorus-related contribution to an algae problem is a sufficient effect to invoke the rule's discharge limit, relator challenges the requirement of tracing the effects of the phosphorus to a particular source before invoking the discharge limit. Relator also cites various sources for the proposition that the phosphorus rule was intended to be applied broadly, even in cases involving discharges that are de minimis. Therefore, relator concludes, the agency should have applied the discharge limit of *406 the phosphorus rule here. But St. Cloud I has already rejected the idea that a nontraceable (or nontraced) contribution to an existing algae problem is sufficient to invoke the phosphorus rule here:
We agree with the [agency's] arguments that the Statement of Need and Reasonableness requires a measurement of individual impact prior to application of the phosphorus rule and the phosphorus rule cannot be triggered merely by measuring the cumulative impact of several discharge sources upon a lake or reservoir or by presuming a source that discharges phosphorus has a measurable effect on a lake or reservoir.
St. Cloud I, 2003 WL 22136314 at *5.
A similar analysis addresses relator's arguments that the tracing requirement is "unrealistic" because certain modeling tools are not sophisticated enough to distinguish the effects of one source of phosphorus from another. St. Cloud I does not mandate the use of a specific modeling tool to show the effects alleged. A similar analysis also addresses relator's arguments that by requiring a showing of "a statistically significant modeled numeric quantification of [the city's] individual impact on Lake Pepin before [the agency] will take any action to limit [St. Cloud's] phosphorus [discharge], the [agency] has gutted the [phosphorus rule] in its ability to protect waters like Lake Pepin."

DECISION
The Minnesota Pollution Control Agency's method of identifying lakes and reservoirs for purposes of Minn. R. 7050.0211, subp. 1a (2003), and the phosphorus strategy are not arbitrary, and the agency correctly refused to classify the Coon Rapids Dam Pool as a reservoir under those authorities. Also, because the agency correctly placed the burden of proof on remand on relator and relator did not trace the impact of phosphorus in lakes or reservoirs downstream from the wastewater treatment plant operated by the City of St. Cloud, the agency was not required to impose the phosphorus discharge limitation of Minn. R. 7050.0211, subp. 1a, on the city's wastewater treatment plant.
Affirmed.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
[1] Relator further argues that finding 43's statement that the residence time for Lake Pepin is 19 days is incorrect and that it should be 9 days. But the finding is consistent with the statement in the phosphorus strategy that Lake Pepin "exhibits residence times of about 19 days on average but may range from a low of 5-6 days at high flow to over 60 days at very low flows." To the extent that relator argues that finding 43 was only addressing the Lake Pepin residence time to emphasize the arbitrariness of the agency's use of a 14-day residence time for reservoirs, that argument is addressed by the agency's admission that a 14-day residence time is not a litmus test for reservoirs.
[2] This analysis also addresses relator's request that the matter be remanded for the agency to do a phosphorus-rule workup based on the impact of the city's discharge on Spring Lake and Spring Lake's impact on Lake Pepin.